UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
**Greenbelt Division**

|  |  |  |
|---|---|---|
| AARON WALKER <br> PO Box 3075 <br> Manassas, Virginia 20108 | ) ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Case No. _____ |
| BRETT KIMBERLIN <br> 8100 Beech Tree Road <br> Bethesda, MD 20817 | ) ) ) ) ) | |
| Respondent. | ) ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**CASE SUMMARY**

COMES NOW Plaintiff Aaron Walker ("Walker') against Brett Kimberlin ("Kimberlin") the torts of defamation, harassment, invasion of privacy, tortious interference with contract and for violations of U.S. Const. am. 1, 42 USC § 1983 and related federal statutes.

**JURISDICTION**

1. This Honorable Court has jurisdiction under the 28 U.S.C. § 1332 as the plaintiff and defendant meet the requirement for diversity. Walker is a citizen of Virginia, Kimberlin is a citizen of Maryland and the relief in this case exceeds $75,000.

2. In the alternative, this dispute invokes federal jurisdiction through 28 U.S.C. § 1331 because it directly implicates the United States Constitution and certain federal statutes.

3. Additionally, this Honorable Court has pendent jurisdiction over state law claims through 28 U.S.C. § 1367, insofar as such state claims involve common nuclei of operative facts with

federal claims and it is most reasonable to try all factually-related claims in one judicial proceeding.

## VENUE

4. Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) as the forum of the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## STATEMENT OF FACTS

5. Walker incorporates paragraphs 1-4 by reference.

6. Walker first became aware of Kimberlin while conducting guest writing, under the pseudonym "Aaron Worthing" for Patrick Frey's internet website "Patterico's Pontifications," from October 2010 to December 2011.

7. Frey had been writing about Brett Kimberlin, known as the "Speedway Bomber" for a series of domestic terrorist bombings that occurred in Indiana in the late 1970s.See http://www.theblaze.com/stories/readymeet-soros-funded-domestic-terrorist-brett-kimberlin-whose-job-is-terrorizing-bloggers-into-silence/ (last viewed on 6/18/2012).

8. In 1981, a federal court convicted Kimberlin of the bombings along with other federal crimes, for which he received a 51-year sentence running concurrently. See *Kimberlin v. White*, 7 F.3d 527, 528-529 (6th Cir. 1993)

9. Kimberlin is now a self-styled progressive activist whose two nonprofit organizations have been funded by well-known liberals including foundations connected to Theresa Heinz Kerry, Barbara Streisand, and George Soros. http://www.theblaze.com/stories/readymeet-soros-funded-domestic-terrorist-brett-kimberlin-whose-job-is-terrorizing-bloggers-into-silence/ (last viewed on 6/18/2012).

10. In 2010 Kimberlin sued blogger/public commenter Seth Allen in Maryland Circuit Court, Montgomery County accusing him of defamation, libel, harassment and interference with business. See (Exhibit "A")

11. Kimberlin won a default judgment against Allen. *Kimberlin v. Allen* (case number 339254v) Circuit Court for Montgomery County, Maryland.

12. Walker, a Virginia-barred attorney, offered Allen a small amount of free legal advice concerning the default judgment. *See* Aaron Walker, *How Brett Kimberlin Tried to Frame Me for a Crime (And How You Can Help!)*, Allergic to Bull, May 17, 2012, *available at* http://allergic2bull.blogspot.com/2012/05/how-brett-kimberlin-tried-to-frame-me_17.html.

13. After Kimberlin became aware of this legal advice he contacted Walker, via email, on December 15, asking him to voluntarily testify in a contempt hearing against Allen in violation of attorney-client privilege. (See Exhibit "B").

14. Kimberlin stated if Walker did not voluntarily testify he would take legal means to obtain Walker's identity and compel him to testify through a subpoena. (See Exhibit "B").

15. On December 20, 2011, Kimberlin did file a motion with the Montgomery County, Maryland Circuit Court seeking to compel the disclosure of Mr. Walker's true identity and falsely accusing Walker of "conspiring with Defendant Seth Allen to defame [Kimberlin] for over a year . . ." *See* Aaron Walker, *Brett Kimberlin, Convicted Terrorist and Perjurer, Attempts to Compel Google and Blogger to Out Me (Part 2 of a Planned 3 Part Series)*, Allergic to Bull, December 21, 2011, *available at* http://allergic2bull.blogspot.com/2011/12/brett-kimberlin-convicted-terrorist-and_21.html.

16. On December 29, 2011, Walker moved to quash the motion to compel his identity. *See* Aaron Walker, *I Respond to Brett Kimberlin's Motion and Subpoenas (Part 4 of a 4 PartSeries) (Update: Instalink and Other Links! Sweet!)*, Allergic to Bull, December 29, 2011, *available at* http://allergic2bull.blogspot.com/2011/12/i-respond-to-brett-kimberlins-motion.html.

17. On January 3, 2012 Kimberlin wrote Walker's attorney offering to "settle" the dispute between he and Walker and stating if this offer was accepted he would not pursue criminal charges and peace orders against Walker, a veiled threat to file both if he did not comply. Kimberlin's veiled

threats came even though up to this point, Walker had never contacted Kimberlin in any way or through any medium. (See Exhibit "C").

18. On January 5, 2012 Kimberlin moved to withdraw his previous motion to compel Walker's identity as moot. He placed in this document copious amounts of Walker's personal information, including his real name, his current address, his current employer, position and their address. (See Exhibit "D").

19. On the same day, Kimberlin sent a letter to the FBI Richmond Office, the Virginia State Police, the Fairfax County (VA) Police Department, and the Manassas (VA) Police Department claiming he was "concerned" for Walker's safety now that his identity was made public. (See Exhibit "E").

20. On January 7, 2012, Kimberlin then emailed a copy of the motion to withdraw to Walker, making him aware that Kimberlin had exposed his identity publicly. See Aaron Walker, *How Brett Kimberlin Tried to Frame Me for a Crime (And How You Can Help!)*, Allergic to Bull, May 17, 2012, *available at* http://allergic2bull.blogspot.com/2012/05/how-brett-kimberlin-tried-to-frame-me_17.html.

21. On January 9, 2012, Walker appeared at the previously scheduled contempt hearing for Seth Allen, hoping to have Kimberlin's motion exposing his identity sealed and have sanctions brought against him.

22. During the hearing, the Judge granted Walker's request to seal information pertaining to Walker.

23. After the hearing, while both men were exiting the Courtroom and entering into the lobby, Kimberlin suddenly raised his iPad in Mr. Walker's presence.

24. Given Kimberlin's history, Walker feared Kimberlin had some type of explosive device and snatched an iPad away from Kimberlin. He later learned that Kimberlin was actually attempting to take his picture and did in fact successfully do so in knowing and willful violation of courthouse rules prohibiting photography.

25. Kimberlin subsequently claimed on different occasions that during course of this altercation, Walker had "decked," repeatedly "hit"," "wrestled," "pushed" him, and that Sheriffs' deputies had to separate Mr. Walker from Mr. Kimberlin and that "Mr. Walker tried to come at me [Kimberlin] several more times but was restrained" by the deputies. (See generally Exhibit "F" "Application for a statement of charges").

26. Security camera footage of the altercation proved Kimberlin's accusations entirely false.

27. Following the January 9, 2012 incident, Kimberlin filed a false statement of charges against Walker in Montgomery County, Maryland. .

28. On the same day, Kimberlin also filed a false Petition for a Peace Order against Walker. (See Exhibit "G").

29. That same day Kimberlin emailed Walker's former attorney, falsely claiming injuries from January 9 incident. (See Exhibit "H").

30. At a February 8, 2012 hearing about the Peace Order, Kimberlin again made the false statement that Walker had "decked" him. (See Exhibit "I").

31. Upon information and belief, Kimberlin's story about the January 9 incident changed after he realized there was video of the incident.

32. Maryland prosecutors, after reviewing the video, declined to press any criminal charges against Walker, but Kimberlin filed another motion opposing that action. (See Exhibit "J").

33. As a result of Kimberlin's conduct, Walker and his wife were both suspended and then both terminated from their employment with the same company.

34. Kimberlin filed a motion to unseal the documents the Judge sealed at the January 9, 2012 hearing. The motion was styled to contain Aaron Walker's identity so that any person searching the Maryland Judiciary Case Search would be able to learn his identity. Upon information and belief, Kimberlin filed this motion for the sole purpose of revealing Walker's concealed identity to the public. (See Exhibit "K").

35. Kimberlin's filing of Exhibit "K" forced Walker to file an emergency motion to keep his identity under seal as ordered by the Judge on January 9, 2012. (See Exhibit "L").

36. On January 27, 2012, Kimberlin filed a "response" to the Court's granting of Walker's emergency motion that contained not only his name but his real address, and the name and address of his former employer into this public document. This action forced Walker to file a second emergency motion and upon information and belief, Kimberlin's response was filed solely to harass and intimidate Walker.

37. Upon information and belief, Kimberlin tacitly or directly encouraged his known associates to make cryptic threats against Walker.

38. When the Peace Order was finally adjudicated before a Maryland Circuit Court Judge, it was dismissed. (See Exhibit "M").

39. Kimberlin subsequently sought and obtained another Peace Order after Walker wrote about his experiences with Kimberlin, leading to the Constitutional violations described in the Memorandum of Points and Authorities accompanying the Emergency Motion for Preliminary Injunction. (See Exhibit "N").

## COUNT ONE
## DEFAMATION

40. Walker reincorporates paragraphs 1-39.

41. Kimberlin has defamed Walker by making numerous false and misleading representations about Walker to third parties and in public documents.

42. Kimberlin knew these statements to be false and intentionally made them with that full knowledge.

43. These actions have damaged Walker.

## COUNT TWO
## HARASSMENT AND INVASION OF PRIVACY

44. Walker reincorporates paragraphs 1-43.

45. Kimberlin has used the legal system to harass Walker by filing numerous frivolous legal actions against him. Commenters have described this extreme form of harassment as "lawfare."

46. In engaging in "lawfare," Kimberlin filed numerous motions for the sole purpose of outing Walker's public persona on the internet which he wished to remain anonymous as is his right under the First Amendment of the United States Constitution.

47. Known Kimberlin associates Ron Bynart and Neal Rauhauser have undertaken numerous harassing and threatening actions against Walker including publicly exposing his online identity on the internet and producing menacing and harassing statement on Twitter. See generally *Walker v. Kimberlin et al*. Case No. Cl. 12-631 Circuit Court for Prince William County, Virginia.

48. Upon information and belief, Bynart and Rauhauser, known Kimberlin associates, were acting under the direction or in conspiracy with Kimberlin.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH CONTRACT

49. Walker reincorporates paragraphs 1-48.

50. Kimberlin's "lawfare" activities have interfered with Walker's livelihood and business activities.

51. Walker's employer fearing for their safety because of Walker's encounters with Kimberlin, a convicted domestic terrorist, caused both Walker and his wife to lose their jobs at the Virginia business where they were both employed.

## COUNT FOUR
## FEDERAL EXTORTION

52. Walker incorporates paragraphs 1-51.

53. Kimberlin's January 3, 2012 email to Walker's attorney, Exhibit "C" threatened to file "bar complaints, sanctions, civil suits, criminal complaints, peace orders and other administrative actions."

54. Kimberlin threatened to accuse Walker of a crime with the intent to extort a thing of value.

55. This communication was transmitted in interstate commerce.

56. Such conduct is in violation of 18 U.S.C. § 875.

57. Walker has suffered and continues to suffer damages as a direct result of Kimberlin's actions.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Walker incorporates paragraphs 1-57.

59. Kimberlin threatened to reveal Walker's identity before it became publicly known.

60. Kimberlin's conduct was intentional.

61. Kimberlin's conduct was outrageous and intolerable.

62. Kimberlin's wrongful conduct caused emotional distress.

63. Walker's emotional distress is and was severe.

64. Walker suffered and continues to suffer damages as a direct result of Defendant Kimberlin's intentional infliction of emotional distress.

## COUNT SIX
## INTERFERENCE WITH BUSINESS EXPECTATIONS

65. Walker reincorporates paragraphs 1-64.

66. Walker had a reasonable expectancy that his employer would continue to provide full-time employment for compensation to Walker.

67. Kimberlin knew or should have known of Walker's relations with his employer and the business expectations that inures to Walker's benefit.

68. Kimberlin intentionally interfered with Walker's current and prospective relations and business expectations in Virginia by the unlawful means of defamation.

69. Walker has suffered and continues to suffer damages as a direct result of Kimberlin's intentional interference with his business expectancies.

**COUNT SEVEN**
**FEDERAL STALKING**

70. Walker reincorporates paragraphs 1-69.

71. Kimberlin used an interactive computer service to engage in a course of conduct that caused Walker substantial emotional distress.

72. Kimberlin used an interactive computer service to engage in a course of conduct that caused the Plaintiff to be in a reasonable fear of death, of serious bodily injury for himself, an immediate family member or his spouse.

73. Kimberlin intended to cause Walker substantial emotional distress.

74. Kimberlin intended to cause Walker to be in reasonable fear of death, or serious bodily injury for himself, an immediate family member or his spouse.

75. Such conduct is in violation of 18 U.S.C. § 2261A.

76. Such conduct had no legitimate purpose.

77. Walker has suffered and continues to suffer damages as a direct result of Kimberlin's stalking.

**PRAYER FOR RELIEF**

78. Walker reincorporates paragraphs 1-77.

79. Walker prays this Honorable Court immediately bar enforcement of the Peace Order in effect against Walker, as a means that Kimberlin has used to abuse the machinery of State authority to harass Walker, and violate his constitutional rights to free speech. The Peace Order is unconstitutional on its face as violative of the First Amendment of the United States Constitution and injures Walker's federally protected civil rights.

80. Walker prays that the Court find Kimberlin has defamed Walker by publishing numerous false and misleading statements about Walker and done so intentionally and maliciously.

81. The Court award compensatory damages against Kimberlin in the amount of $1,000,000.

82. The Court award punitive damages against Kimberlin in the amount of $1,000,000 for his defamation, harassment and invasion of privacy committed with malice, i.e. evil intent, intent to injure or intent to oppress, on the part of Kimberlin.

83. All other justice the Court deems mete and proper.

Respectfully submitted,

Dated June 22, 2012

T. Bruce Godfrey
USDC District of Maryland
    Bar #24596
Law Office of Bruce Godfrey
10451 Mill Run Circle, Suite 400
Owings Mills, MD 21117
(410) 561-6061
godfrey@brucegodfrey.com
facsimile: (888) 241-3135

Dan Backer, Esq.*
Stephen M. Hoersting, Esq. *
DB Capitol Strategies PLLC
209 Pennsylvania Avenue SE
Suite 2109
Washington, DC 20003
(202) 210-5431
dbacker@dbcapitolstrategies.com

**Attorneys for Plaintiff**

*Motions for *Pro Hac Vice* to be filed.