UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

AUG 1 3 2012

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

AARON WALKER,
PLAINTIFF

VS.                                          JFM 12-1852

BRETT KIMBERLIN
DEFENDANT.

## DEFENDANT'S RESPONSE IN OPPOSITION TO REOPENING CASE

Now comes Defendant Brett Kimberlin and moves this Court to deny Plaintiff's

LINE motion to reopen this case.

1. Plaintiff is abusing the civil process in this case and wasting scare judicial
   resources by filing this case in federal court when he previously filed a
   virtually identical suit in Prince William County Virginia Circuit Court raising
   virtually identical grounds. Aaron Walker v. Brett Kimberlin et al., No CL12-
   631. See attached.  That case is presently pending.

2. Plaintiff failed to inform this Court about that other case even though the
   same attorney is handling both cases.

3. Plaintiff has failed to serve Defendant with any pleadings filed in this case
   thereby violating this Court's rules.

4. This case is both frivolous and malicious and fails to raise any substantial
   federal question.

5. Plaintiff, an unemployed lawyer, uses frivolous litigation against Defendant to
   beg for dollars online from gullible people who are misled into believing that
   Plaintiff's rights have been violated in some way or another by Defendant.

Plaintiff has created his own cottage industry complete with fraudulent defense funds (one which is under criminal investigation by the IRS) insisting that Defendant must "pay" for harming Plaintiff by exercising his First Amendment right to access to the courts. Indeed, even Plaintiff's counsel has gotten into the act by posting a website begging for dollars to litigate this case even though he has stated elsewhere that he is representing Plaintiff pro bono.

6. It is an abuse of civil procedure in the federal courts to enable a "litigation for dollars" scheme.

WHEREFORE, for all the above reasons, Defendant moves this Court to deny Plaintiff's LINE to re-open this case.

Respectfully submitted,

Brett Kimberlin

## CERTIFICATE OF SERVICE

I certify that served a copy of this motion on attorney T. Bruce Godfrey, 10451 Mill Run Circle, Suite 400, Owings Mills, MD 21117, this 13th day of August 2012 by US Mail.

Brett Kimberlin

VIRGINIA:

## IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY

Aaron J. Walker
    7537 Remington Road
    Manassas, Virginia  20109

                Plaintiff,

    v.

Brett Kimberlin,
    8100 Beech Tree Road
    Bethesda, Maryland  20817

             and

Ron Brynaert,
    526 3rd Avenue
    Brooklyn, New York  11215

             and

Neal Rauhauser,
    220 S. Century Blvd
    Rantoul, Illinois  61866

             Defendants

Case No. $153\ CL\ 12 - 631$

## COMPLAINT

COMES NOW, the Plaintiff, Aaron J. Walker, *pro se*, and files his Complaint against Defendants Brett Kimberlin, Ron Brynaert, and Neal Rauhauser for Defamation, Extortion, Intentional Infliction of Emotional Distress, Tortious Interference with Business Relations, Business Conspiracy under Va. Code §18.2-499, and Common Law Conspiracy, stalking and harassment, and seeking an injunction.

## The Parties

1. The Plaintiff, Aaron J. Walker, is an attorney in good standing in Virginia and Washington, D.C. He lives in Manassas, Virginia, and therefore all of the torts listed herein were committed at that location, and felt at that location as well as in other jurisdictions.

2. Defendant Brett Kimberlin is a convicted terrorist known as The Speedway Bomber, *Kimberlin v. White*, 7 F.3d 527 (6th Cir. 1993), when he set off eight bombs in six days. Defendant Kimberlin is also a convicted perjurer, *Kimberlin v. White*, 798 F.Supp. 472 (1992). He is a public figure. He is a founder of the political groups Velvet Revolution and Justice Through Music.

3. Defendant Ron Brynaert is a former reporter and now blogger.[1]

4. Defendant Neal Rauhauser is a blogger, who has assumed multiple false identities including "Gaped Crusader."

5. Upon information and belief, Defendants Brynaert and Rauhauser write together under the alias "Just Call Me Lefty."

## Factual Background

6. At all times relevant hereto, the Plaintiff has worked as a lawyer in Virginia and Washington, D.C.

7. The Plaintiff has also blogged as Aaron Worthing and A.W. at Patterico's Pontifications, Big Government, Big Journalism, Allergic to Bull and Everyone Draw

---

[1] For the benefit of the court each "blog," short for weblog, is composed of a series of posts which discuss various topics, sharing facts, opinion and analysis. Then, with all of the blogs relevant to this motion, the post allows a broad swath of the public to compose and attach "comments" to each post, allowing for praise, criticism and even off-topic remarks. Regular commenters often even communicate, in public, in this fashion. For more discussion of how such features of the internet work, see *Independent Newspapers v. Brodie*, 966 A.2d 432 (M.D. 2009), especially starting at 437.

Mohammed. Those blogs can be found at http://patterico.com/, http://biggovernment.com/, http://bigjournalism.com/, http://allergic2bull.blogspot.com/, http://everyonedrawmohammed.blogspot.com/ respectively.

8.    At all times relevant to these proceedings, the Plaintiff has maintained his anonymity by the use of the pseudonyms "A.W." and "Aaron Worthing" although the Defendants have recently determined these pseudonyms belongs to the Plaintiff. The Plaintiff has always made it clear that A.W. and Aaron Worthing is the same person.

9.    "Patterico's Pontifications" is, upon information and belief, a blog created by John Patrick Frey, a Los Angeles Deputy District Attorney. The Plaintiff has been allowed to post "guest posts" at that blog under his pseudonym "Aaron Worthing," from October, 2010, to December 2011. The Plaintiff no longer has active posting privileges at this site.

10.    "Big Government" and "Big Journalism," are group blogs that upon information and belief were founded by Andrew Breitbart. The Plaintiff has been allowed to post a few times on each site under his pseudonym "Aaron Worthing."

11.    "Allergic to Bull" is the Plaintiff's own creation using Blogger's free blogging tools. The tag line of the site is "[l]aw, life and the local spectator sport called politics." It is a general interest blog with some emphasis on legal issues. He blogs at that site under the pseudonym "A.W."

12.    "Everyone Draw Mohammed" will be discussed in detail momentarily, but it was founded by the Plaintiff using Blogger's free tools and today is also administered by two of the Plaintiff's friends, known anonymously as "Dustin" and "J.D." As of Saturday, January 14, 2011, that site has been rendered "private" meaning it can only be viewed by its "owners:" the Plaintiff, "Dustin" and "J.D." He blogs at that site under the pseudonym "A.W." and "Aaron Worthing."

3

13.     The Plaintiff was born with three learning disabilities, and has faced discrimination most of his life because of them. He has a real and rational fear of discrimination based on his disabilities.

14.     The Plaintiff has spoken openly, under the shield of anonymity, at *Patterico's Pontifications* and *Allergic to Bull* about his disabilities and his experiences with discrimination.

15.     Further, as mentioned before, the Plaintiff is the proprietor and creator of a website entitled "Everyone Draw Mohammed." The activities of this site, through the exercise of free speech has, in Defendant Kimberlin's own words, "inflame[d] [the] hostilities of Muslim hardliners." Further, by the Defendant's Kimberlin's own admission to the FBI, the Fairfax County Police and the Prince William County Police, the Plaintiff is likely to be the subject of terrorist attack if they reveal he is "Aaron Worthing," and all three Defendants have, or have attempted to, reveal it. They have literally tried to get the Plaintiff killed.

16.     On or about October 13, 2010, Defendant Kimberlin sued Seth Allen, then known by the pseudonyms "Socrates" and "Prepostericity" in Montgomery County Circuit Court (*Kimberlin v. Allen*, case number 339254V), in Maryland, claiming defamation, tortious interference with business relations, and harassment. The case was frivolous, but due to Mr. Allen's lack of attention to the case Mr. Kimberlin was able to obtain a default judgment against Mr. Allen on or about July 7, 2011.

17.     On or about August 22, 2011, Mr. Allen contacted the Plaintiff, seeking the Plaintiff's help in his suit against the Defendant Kimberlin. Because the Plaintiff is not licensed to practice in Maryland there was little help he could offer. However, without revealing any privileged communications the Plaintiff offered limited help to Mr. Allen.

18.     On or about November 14, 2011, a hearing to determine damages was held in *Kimberlin v. Allen*. Defendant Kimberlin won a nominal judgment against Mr. Allen, as well as

4

an injunction stating Mr. Allen may not defame or tortiously interfere with Defendant Kimberlin's business.

19. Defendant Kimberlin had on some date prior to November 14 formed a conspiracy with Defendants Brynaert and Rauhauser to stalk, harass, defame, intentionally inflict emotional distress and commit other illegal and/or immoral acts against any person perceived as an "enemy," particularly anyone who dared to accurately describe Defendant Kimberlin's criminal past and any person seen as helping any target of this conspiracy.

20. When Mandy Nagy wrote a post at Big Government accurately describing Defendant Kimberlin's background, all three Defendants subjected her to defamation, and harassment, with threats of suit, false accusations of conspiracy. They also attempted to recruit hackers to harass her. The Defendants attempted to prevent her from getting and keeping any employment.

21. When John Patrick Frey, a Deputy District Attorney in Los Angeles, wrote a post at Patterico's Pontifications accurately describing Defendant Kimberlin's background, Defendant Kimberlin himself threatened to sue Mr. Frey for defamation. When challenged to actually name an example of defamation, Defendant Kimberlin could not name any. This did not stop the Defendants Kimberlin, and Brynaert from filing numerous frivolous complaints with the Los Angeles District Attorney's office, and with the California State Bar against Mr. Frey. Defendant Rauhauser encouraged other parties to do the same. Further, Defendant Rauhauser published the home address of Mr. Frey and the name of his wife and Defendant Kimberlin has caused websites associated with his organizations to publish the home address and photographs of Mr. Frey's home, increasing the chances that they might be subjected to violence by the persons they have sent to prison as part of their work in the District Attorney's office in Los Angeles.

22.     During the "Weinergate" scandal over the summer of 2011, Michael Stack became a target of this conspiracy.  The scandal involved then-Congressman Anthony Weiner sending an inappropriate message via Twitter to all of his followers when apparently it was only supposed to be sent to a young woman who was not his wife.  Mr. Stack was one of the people who saw this message and helped preserve and publicize it early in the scandal.

23.     Because of this, Mike Stack was picked out as an "enemy" and subjected to defamation, and harassment online.   Members of this conspiracy helped the website The Smoking Gun obtain and publish personal information about him, including irrelevant criminal convictions and bankruptcies.  Defendant Rauhauser published Mr. Stack's home address and personal phone numbers.  Mr. Stack has been harassed in his business and his parents have been harassed as well.

24.     Defendant Kimberlin learned of the limited help the Plaintiff provided to Mr. Allen. Therefore the Plaintiff was determined to be an "enemy" of the Defendant Kimberlin, and he directed this conspiracy to focus on the Plaintiff and attempt to ruin the Plaintiff's life and even possibly get him killed, by harassment, defamation, intentional infliction of emotional distress, and providing intentional aid to any Islamic terrorists who might seek to harm the Plaintiff.

25.     On December 12, 2011, and acting in furtherance of this conspiracy, Defendant Brynaert wrote an email to numerous officials at Yale University attempting to obtain the real name for "Aaron Worthing."  As "Aaron Worthing," the Plaintiff mentioned he had gone to law school at that institution.  To the Plaintiff's knowledge, Yale has never honored this request.

26.     On December 12, 2011, Defendant Brynaert wrote to Ken Ashford, an attorney in good standing in North Carolina who works for the law firm Womble Caryle.  As "Aaron Worthing" the Plaintiff publicly mentioned that Mr. Ashford knew of his true identity.

6

27.     When Mr. Ashford rebuffed Defendant Brynarert's request for information, Defendant Brynarert threatened to file frivolous reports of misconduct with the North Carolina bar and to send an email complaining about his refusal to every lawyer in Mr. Ashford's firm. Defendant Brynaert did eventually call the firm's human resources department and lodged a frivolous complaint.

28.     The next evening, on December 15, 2011, just after midnight Defendant Kimberlin contacted the Plaintiff via email. He stated remarkably that he wished for the Plaintiff to reveal to his real name and testify against his client, even asking the Plaintiff to ask Mr. Allen to waive attorney-client privilege. And if the Plaintiff did not comply voluntarily, he would subpoena Google.com for his information.

29.     After only two business days and the weekend before Christmas, Defendant Kimberlin did file a subpoena of Google, Inc. and a motion to compel against Google, seeking the Plaintiff's true name on or about December 19, 2011, providing the Plaintiff with notice of his action.     Then on December 22, 2011, he subpoenaed Comcast, Inc. seeking the same information, but without providing the Plaintiff notice of that subpoena.

30.     On December 29, 2011, the Plaintiff filed a response (along with a motion to file that response anonymously or under seal), in Montgomery County (Maryland) Circuit Court, opposing the motion to compel, moving to quash the subpoenas. The Plaintiff argued that Defendant Kimberlin had an improper purpose in seeking that discovery—that he was not truly interested in the Plaintiff's testimony at all, but only wished to identify the Plaintiff so he could be exposed to stalking and harassment.

31.     The Plaintiff also moved that the underlying injunction be dismissed because the Defendant Kimberlin's misconduct, including the fact that Defendant Kimberlin had lied to the court at the November 14, 2011 hearing. Specifically in the November 14 hearing, Defendant

7

Kimberlin stated that he never had his parole revoked, which is contradicted by *Kimberlin v. DeWalt*, 12 F.Supp.2d 487 (D. Md., 1998). The Plaintiff also recommended that Defendant Kimberlin be investigated for potential perjury charges.

32. The Plaintiff further published a copy of this filing on the web, with only slight redactions, thus informing the world about Defendant Kimberlin's possible perjury and related misconduct.

33. These actions further infuriated Defendant Kimberlin, fueling his desire to harm the Plaintiff.

34. The Plaintiff had retained Beth Kinsley, Esq. as local counsel in Maryland to help with the procedural issues related to filing anonymously.

35. In an email on December 30, the Plaintiff Kimberlin threatened both the Plaintiff and Ms. Kinsley with frivolous ethics complaints.

36. On January 7, 2012, Defendant Kimberlin sent a notice to the Plaintiff that he had filed a motion to withdraw his subpoenas as moot, attaching a copy of the motion itself. The basis of this motion was that he had obtained the Plaintiff's identifying information by other means. While it was not necessary to even provide the Plaintiff's name, he not only provided the Plaintiff's name but also provided: 1) the Plaintiff's home address, 2) his birth date, 3) where he went to high school, 4) whether he graduated from that school, 5) where and when he obtained his undergraduate degree, 6) information contained in a lawsuit the Plaintiff once filed that was supposed to be under seal, 7) where and when he went to law school, 8) his current position, 9) his current employer, and 10) that employer's address.

37. Upon information and belief, this was done intentionally so that his filing would be part of the public record, to give his co-conspirators the fig leaf that they were just reproducing court documents when they released this information into the world.

8

38.     On or about January 6, 2012, Defendant Kimberlin emailed the FBI, the Fairfax County Police, and the Prince William County Police, and other law enforcement officials or agencies informing them that he had filed this document with the court, revealing the Plaintiff's identity as Aaron Worthing and his addresses to the world, specifically stating to them that he believed that "Muslim Hardliners" (his term) would seek to harm Mr. Worthing, or any person who happened to be near him, due to his filing.

39.     This act had the effect of confessing that he had intentionally exposed Mr. Worthing to the danger of terrorist attack.

40.     On Monday, January 9, 2012, the Plaintiff obtained an order sealing Defendant Kimberlin's Motion to Withdraw on the premise that it was filed for an improper purpose.

41.     On that same day was the hearing where Defendant Kimberlin claimed he wanted the Plaintiff's testimony.  Although the Plaintiff was present and made his presence known, the Defendant Kimberlin declared that he was not interested in the Plaintiff's testimony.

42.     After the hearing, the Plaintiff challenged the Defendant Kimberlin saying, "the truth is you never wanted my testimony, you just wanted my identity."  Defendant Kimberlin replied, angrily, "*and I got it!*"

43.     Later that day Defendant Kimberlin filed false charges of assault against the Plaintiff and filed for a Peace Order based on those false charges.

44.     On Saturday, January 14, 2012, Ron Brynaert revealed to the world that Aaron Worthing was Aaron Walker.

## COUNT I
## DEFAMATION—DEFENDANT BRYNAERT

45.     The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 44 above.

9

46. The following statements of Defendant Brynaert constitute defamation:

a. "Even hateful trolls like @AaronWorthing deserve lawyers, but Beth Kingsley is helping him attack the Plaintiff, menace & break ethics rules." available at https://twitter.com/#!/ronbryn/status/155333422087290880. "@AaronWorthing" is the known twitter profile of the Plaintiff.

b. "Real lawyer Beth Kingsley forwards private emails to fake lawyer and menacing troll @AaronWorthing who publishes: http://allergic2bull.blogspot.com/2012/01/bret-kimberlin-convicted-terrorist-and.html" available at https://twitter.com/#!/ronbryn/status/155329376152596481

c. "@AndrewBreitbart @Patterico Please tell @AaronWorthing @TRPWL @Dust92 to stop menacing my sister. She has private # because she was stalked." Available at https://twitter.com/#!/ronbryn/status/151852560452550656.

d. "@Patterico @AndrewBreitbart and @Liberty_Chick can ask @TRPWL @AaronWorthing and @Dust92 to stop attacking my rape victim sister but won't." available at https://twitter.com/#!/ronbryn/status/151848573481394177.

e. "Did fake lawyer using fake name - wearing real Star Wars pajamas - use fake UPS? @aaronworthing http://allergic2bull.blogspot.com/2011/12/update-on-my-kimberlin-pleading.html http://www.ups.com/content/us/en/resources/ship/imp_exp/operation.html" available at https://twitter.com/#!/ronbryn/status/151717954633994241.

f. "@AaronWorthing It's hysterical that you're leaking court docs and making Patrick Ewing predictions while still claiming to be a real lawyer." available at https://twitter.com/#!/ronbryn/status/150020345657696256.

g. "Aaron is playing games with hackers." Available at http://ronbryn.blogspot.com/2011/12/pattericos-deleted-weinergate-post-part.html.

h.   "Worthing deleted a comment I left at his blog an hour ago, asking for his real name and the state he practices law so I could sue him for lying about me in a defamatory article and report him to the bar[.]"  This statement was contained in an email from Ron Brynaert to numerous recipients of Yale University, on December 12, 2011.

i.   "Unlike Aaron Worthing... you appear to be a real lawyer."  This statement was contained in an email from Ron Brynaert to Kenneth Ashford, on December 13, 2011.

j.   "Anyway, [the Plaintiff] is libeling me on his Allergic blog."  This statement was contained in an email from Ron Brynaert to Kenneth Ashford, on December 13, 2011.

k.   "@AaronWorthing I would consider attacking someone in a courthouse an actual terrorist act but you can keep accusing me of paranoid fantasies".  Available at https://twitter.com/#!/ronbryn/status/158311875036188673.

l.   "I'm no lawyer like @AaronWorthing but I doubt creating a blog to offend Muslims earns you an FBI pass to slander people online anonymously".  Available at https://twitter.com/#!/ronbryn/status/159471180024262658.

m.   "@Liberty_Chick   To   figure   out   why   liberals   obsessed   with @AndrewBreitbart ignore @AaronWorthing arrest, swattings & your tweets to RW hackers".  Available at https://twitter.com/#!/ronbryn/status/159748171407429632."   Later Defendant Brynaert admitted that was incorrect to say the Plaintiff had been arrested, and that he had relied on the word of "hoaxer @NealRauhauser."

n.   "@AaronWorthing actually did punch someone in the face & faces 10 years for it but @Patterico @Dust92 @Liberty_Chick convict me for a tweet."  Available at https://twitter.com/#!/ronbryn/status/161555050546737152.

47.   Each of these statements contain falsehoods, published to third parties, that harm the reputation of the Plaintiff.  These statements were made with malice.  Further, even when the

comments are directed at his pseudonym "Aaron Worthing," the Plaintiff's reputation is harmed because Defendant Brynaert has identified "Aaron Worthing" as the Plaintiff.

48.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's defamation.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT II
## DEFAMATION—DEFENDANT KIMBERLIN

49.    The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 48 above.

50.    The following statements of Defendant Kimberlin constitute defamation:

a.    "I want to memorialize my concern about Mr. Worthing's violations of the Rules of Professional Responsibility"

b.    "Mr. Worthing... [is] now threatening to present criminal charges to obtain an advantage in a civil matter[.]"

c.    "Mr. Worthing... [is] making false statements about me."

d.    "[The Plaintiff] has... urged others to attack me."

e.    "I want to be left alone. That's what Judge Jordan told Seth Allen to do, but he refused to comply with that order or the permanent injunction. Mr. Worthing has egged him on and advised him to violate the order."

f.    "[The Plaintiff] is urging criminal prosecution of me for what he frivolously argues is perjury."

12

g. "Maybe [the Plaintiff] has a First Amendment right to blog anonymously, but he does not have a First Amendment right to violate the Rules [of Professional Conduct]. And I don't believe that any Court or Bar will allow Mr. Worthing to remain anonymous after violating the Rules so blatantly."

h. "[The Plaintiff] is publishing attacks on me personally in order to defame me and interfere with my business."

i. "I am a stalking victim and Mr. Worthing is continuing the stalking."

51. Each of these statements were made in a December 30, 2011 email to Beth Kinsley and contain falsehoods, published to third parties, that harm the reputation of the Plaintiff. These statements were made with malice. Even when the comments are directed at his pseudonym "Aaron Worthing," the Plaintiff's reputation is harmed because Defendant Brynaert has identified the Plaintiff as Aaron Worthing.

52. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's defamation.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT III
## DEFAMATION—DEFENDANT RAUHAUSER

53. The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 52 above.

54. The following statements of Defendant Rauhauser constitutes defamation:

a. "Cyberbully John Patrick Frey, who lost contributor Lee Stranahan this summer, has also just lost the offensive, Islamophobic Aaron Worthing[.]" This was posted on

13

the now-withdrawn website Gaped Crusader in a post entitled "Regarding Cyberbullies" posted on or about December 16, 2011.

      b.    "Fake lawyer & newly regretful Muslim baiter 'Aaron Worthing[.]'" This was posted on the now-withdrawn website Gaped Crusader in a post entitled "The Great Lolzcow Stampede Of 2011" posted on or about December 22, 2011.

      55.    Each of these statements contain falsehoods, published to third parties, that harm the reputation of the Plaintiff. These statements were made with malice. Even when the comments are directed at his pseudonym "Aaron Worthing," the Plaintiff's reputation is harmed because Defendant Brynaert has identified the Plaintiff as Aaron Worthing.

      56.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's defamation.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT IV
## FEDERAL EXTORTION—DEFENDANT KIMBERLIN

      57.    The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 56 above.

      58.    On January 3, 2012, Defendant Kimberlin wrote an email to the Plaintiff's attorney, Beth Kinsley. He attached a "settlement offer" in which he threatened to file "bar complaints, sanctions, civil suits, criminal complaints, peace orders and other administrative actions" if the Plaintiff did not withdraw his pleading of December 29, 2011 and remove all blog posts about Defendant Kimberlin.

59. Thus Defendant Kimberlin threatened to accuse the Plaintiff of a crime with the intent to extort a thing of value.

60. This communication was transmitted in interstate commerce.

61. Such conduct is in violation of 18 U.S.C. § 875.

62. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's extortion.

WHEREFORE, the Plaintiff requests an award of damages for Federal extortion of no less than $2,000,000.00, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT V
## MARYLAND EXTORTION—DEFENDANT KIMBERLIN

63. The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 62 above.

64. On January 3, 2012, Defendant Kimberlin wrote an email to the Plaintiff's attorney, Beth Kinsley. In the form of a "settlement offer," he threatened to file "bar complaints, sanctions, civil suits, criminal complaints, peace orders and other administrative actions" if the Plaintiff did not withdraw his pleading of December 29, 2011, and remove all blog posts about Defendant Kimberlin.

65. Thus Defendant Kimberlin threatened to falsely accuse the Plaintiff of a crime or of anything that, if the accusation were true, would tend to bring the Plaintiff into contempt or disrepute with the intent to extort anything of value.

66. Thus Defendant Kimberlin threatened to inflict emotional distress on the Plaintiff with the intent to extort anything of value.

15

67.     Thus Defendant Kimberlin threatened to wrongfully cause economic damage to the Plaintiff with the intent to extort anything of value.

68.     Upon information and belief, this extortionate threat originated in Maryland and therefore Maryland law would apply, too.

69.     Such conduct is in violation of Md. Criminal Law Code §3-704 and § 3-706.

70.     The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's extortion.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT VI
## FEDERAL EXTORTION—DEFENDANT RAUHAUER

71.     The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 70 above.

72.     On January 9, 2012, Defendant Rauhauser wrote an email to the Plaintiff in which he threatened to reveal the Plaintiff's real name and identity as "Aaron Worthing" unless the Plaintiff would "remove anything you've ever written about me [Rauhauser]."

73.     Thus Defendant Rauhauser threatened to injure the reputation of the Plaintiff with the intent to extort a thing of value.

74.     This communication was transmitted in interstate commerce.

75.     Such conduct is in violation of 18 U.S.C. § 875.

76.     The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's extortion.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT VII
## MARYLAND EXTORTION—DEFENDANT RAUHAUSER

77.    The Plaintiff incorporates, as if fully stated herein, the allegations of paragraphs 1 through 76 above.

78.    On January 9, 2012, Defendant Rauhauser wrote an email to the Plaintiff in which he threatened to reveal the Plaintiff's real name and identity as "Aaron Worthing" unless the Plaintiff "remov[ed] anything you've ever written about me."

79.    Thus Defendant Rauhauser threatened to inflict emotional distress on the Plaintiff with the intent to extort anything of value.

80.    Thus Defendant Rauhauer threatened to wrongfully cause economic damage to the Plaintiff with the intent to extort anything of value.

81.    Thus Defendant Rauhauser threatened to cause physical injury to the Plaintiff with the intent to extort anything of value.

82.    Upon information and belief, this extortionate threat originated in Maryland and therefore Maryland law would apply, too.

83.    Such conduct is in violation of Md. Criminal Law Code §3-704 and § 3-706.

84.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's extortion.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### VIRGINIA LAW—DEFENDANT KIMBERLIN

85.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1

through 84 above.

86.    Defendant Kimberlin has threatened to reveal the Plaintiff's true name to the

world and to connect that name to the online pseudonym Aaron Worthing.

87.    Defendant Kimberlin's conduct was intentional.

88.    Defendant Kimberlin's conduct was outrageous and intolerable.

89.    Defendant Kimberlin's wrongful conduct caused the emotional distress.

90.    The Plaintiff's emotional distress is and was severe.

91.    The Plaintiff has suffered and continues to suffer damages as a direct result of

Defendant Kimberlin's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00,

punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and

equitable.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### MARYLAND LAW—DEFENDANT KIMBERLIN

92.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1

through 91 above.

93.    Defendant Kimberlin has threatened to reveal the Plaintiff's true name to the

world and to connect that name to the online pseudonym Aaron Worthing.

94.    Defendant Kimberlin's conduct was intentional.

95.    Defendant Kimberlin's conduct was negligent.

96.    Defendant Kimberlin's conduct was outrageous and intolerabale.

18

97.    Defendant Kimberlin's wrongful conduct caused the emotional distress.

98.    Defendant Kimberlin engaged in this conduct in Maryland.

99.    The Plaintiff's emotional distress is and was severe.

100.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## VIRGINIA LAW—DEFENDANT RAUHAUSER

101.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 100 above.

102.    Defendant Rauhauser has threatened to reveal the Plaintiff's true name to the world and to connect that name to the online pseudonym Aaron Worthing.

103.    Defendant Rauhauser's conduct was intentional.

104.    Defendant Rauhauser's conduct was outrageous and intolerabale.

105.    Defendant Rauhauser's wrongful conduct caused the emotional distress.

106.    Defendant Rauhauser engaged in this conduct in Maryland.

107.    The Plaintiff's emotional distress is and was severe.

108.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## MARYLAND LAW—DEFENDANT RAUHAUSER

109. The Plaintiff incorporate as if fully stated herein, the allegations of paragraphs 1 through 108 above.

110. Defendant Rauhauser has threatened to reveal the Plaintiff's true name to the world and to connect that name to the online pseudonym Aaron Worthing.

111. Defendant Rauhauser's conduct was intentional.

112. Defendant Rauhauser's conduct was negligent.

113. Defendant Rauhauser's conduct was outrageous and intolerable.

114. Defendant Rauhauser's wrongful conduct caused the emotional distress.

115. Defendant Rauhauser engaged in this conduct in Maryland.

116. The Plaintiff's emotional distress is and was severe.

117. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## VIRGINIA LAW—DEFENDANT BRYNAERT

118. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 117 above.

119. Defendant Brynaert actually revealed the Plaintiff's true name to the world and connected that name to the online pseudonym Aaron Worthing.

120. Defendant Brynaert's conduct was intentional.

121.    Defendant Brynaert's conduct was outrageous and intolerable.

122.    Defendant Brynaert's wrongful conduct caused the emotional distress.

123.    The Plaintiff's emotional distress is and was severe.

124.    The Plaintiff has suffered and continues to suffer damages as a direct result of

Defendant Brynaert's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00,

punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and

equitable.

## COUNT XIII
## INFLICTION OF EMOTIONAL DISTRESS
## NEW YORK LAW—DEFENDANT BRYNAERT

125.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1

through 124 above.

126.    Defendant Brynaert actually revealed the Plaintiff's true name to the world and

connected that name to the online pseudonym Aaron Worthing.

127.    Defendant Brynaert's conduct was intentional.

128.    Defendant Brynaert's conduct was negligent.

129.    Defendant Brynaert's conduct was outrageous and intolerable.

130.    Defendant Brynaert's wrongful conduct caused the emotional distress.

131.    The Plaintiff's emotional distress is and was severe.

132.    The Plaintiff has suffered and continues to suffer damages as a direct result of

Defendant Brynaert's intentional infliction of emotional distress.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00,

punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and

equitable.

## COUNT XIV
## INTERFERENCE WITH BUSINESS EXPECTANCIES
## VIRGINIA LAW—DEFENDANT KIMBERLIN

133.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 132 above.

134.    The Plaintiff has or had a reasonable business expectancy that Professional Healthcare Management, Inc. (PHR) would continue to provide full time employment for compensation to the Plaintiff.

135.    Defendant Kimberlin knew or should have known of the Plaintiff's relations with PHR and the business expectancy that inures to the Plaintiff's benefit.

136.    Defendant Kimberlin intentionally interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

137.    Defendant Kimberlin negligently interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

138.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XV
## INTERFERENCE WITH BUSINESS RELATIONS
## MARYLAND LAW—DEFENDANT KIMBERLIN

139.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 138 above.

140.    Defendant Kimberlin willfully and intentionally acted in a manner calculated to cause damage to the Plaintiff in his lawful business pursuits.

141.    Defendant Kimberlin's willful and intentional acts were done with the purpose of causing loss or damage to the Plaintiff's business, by the unlawful means of defamation.

142.    Defendant Kimberlin's willful and intentional acts were undertaken without just cause.

143.    Upon information and belief, this conduct originated in Maryland and therefore Maryland law would apply, too.

144.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's malicious interference with his business relations.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XVI
## INTERFERENCE WITH BUSINESS EXPECTANCIES
## D.C. LAW—DEFENDANT KIMBERLIN

145.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 144 above.

146.    The Plaintiff has or had a reasonable business expectancy with current and prospective clients.

147.    Defendant Kimberlin knew or should have known of the Plaintiff's business expectancy that inures to the Plaintiff's benefit.

148.    Defendant Kimberlin intentionally interfered with the Plaintiff's current and prospective relations and business expectancies in the District of Columbia, by the unlawful means of defamation.

149.   Defendant Kimberlin negligently interfered with the Plaintiff's current and prospective relations and business expectancies in the District of Columbia, by the unlawful means of defamation.

150.   The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XVII
## INTERFERENCE WITH BUSINESS EXPECTANCIES
## VIRGINIA LAW—DEFENDANT RAUHAUSER

151.   The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 150 above.

152.   The Plaintiff has or had a reasonable business expectancy that Professional Healthcare Management, Inc. (PHR) would continue to provide full time employment for compensation to the Plaintiff.

153.   Defendant Rauhauser knew or should have known of the Plaintiff's relations with PHR and the business expectancy that inures to the Plaintiff's benefit.

154.   Defendant Rauhauser intentionally interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

155.   Defendant Rauhauser negligently interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

156. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XVIII
## INTERFERENCE WITH BUSINESS RELATIONS
## MARYLAND LAW—DEFENDANT RAUHAUSER

157. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 156 above.

158. Defendant Rauhauser willfully and intentionally acted in a manner calculated to cause damage to the Plaintiff in his lawful business pursuits.

159. Defendant Rauhauser's willful and intentional acts were done with the purpose of causing loss or damage to the Plaintiff's business, by the unlawful means of defamation.

160. Defendant Rauhauser's willful and intentional acts were undertaken without just cause.

161. Upon information and belief, this conduct originated in Maryland and therefore Maryland law would apply, too.

162. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's malicious interference with his business relations.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

### COUNT XIX
### INTERFERENCE WITH BUSINESS EXPECTANCIES
### D.C. LAW—DEFENDANT RAUHAUSER

163.  The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 161 above.

164.  The Plaintiff has or had a reasonable business expectancy with current and prospective clients.

165.  Defendant Rauhauser knew or should have known of the Plaintiff's business expectancy that inures to the Plaintiff's benefit.

166.  Defendant Rauhauser intentionally interfered with the Plaintiff's current and prospective relations and business expectancies in the District of Columbia, by the unlawful means of defamation.

167.  Defendant Rauhauser negligently interfered with the Plaintiff's current and prospective relations and business expectancies in the District of Columbia, by the unlawful means of defamation.

168.  The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Rauhauser's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

### COUNT XX
### INTERFERENCE WITH BUSINESS EXPECTANCIES
### VIRGINIA LAW—DEFENDANT BRYNAERT

169.  The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 168 above.

170.    The Plaintiff has or had a reasonable business expectancy that Professional Healthcare Management, Inc. (PHR) would continue to provide full time employment for compensation to the Plaintiff.

171.    Defendant Brynaert knew or should have known of the Plaintiff's relations with PHR and the business expectancy that inures to the Plaintiff's benefit.

172.    Defendant Brynaert intentionally interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

173.    Defendant Brynaert negligently interfered with the Plaintiff's current and prospective relations and business expectancies in Virginia, by the unlawful means of defamation.

174.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXI
## INTERFERENCE WITH BUSINESS EXPECTANCIES
## D.C. LAW—DEFENDANT BRYNAERT

175.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 174 above.

176.    The Plaintiff has or had a reasonable business expectancy that Professional Healthcare Management, Inc. (PHR) would continue to provide full time employment for compensation to the Plaintiff and with future and prospective clients.

27

177.   Defendant Brynaert knew or should have known of the Plaintiff's business expectancy that inures to the Plaintiff's benefit.

178.   Defendant Brynaert intentionally interfered with the Plaintiff's current and prospective relations and business expectancies, by the unlawful means of defamation.

179.   Defendant Brynaert negligently interfered with the Plaintiff's current and prospective relations and business expectancies, by the unlawful means of defamation.

180.   Such conduct was conducted in the state of New York and therefore New York law would apply, as well as Maryland, Virginia and D.C. law.

181.   The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXII
## INTERFERENCE WITH BUSINESS RELATIONS
## NEW YORK LAW—DEFENDANT BRYNAERT

182.   The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 181 above.

183.   The Plaintiff has or had a reasonable business expectancy with current and prospective clients.

184.   Defendant Brynaert knew or should have known of the Plaintiff's business expectancy that inures to the Plaintiff's benefit.

185.   Defendant Brynaert intentionally interfered with the Plaintiff's current and prospective relations and business expectancies, by the unlawful means of defamation.

28

186.   Defendant Brynaert negligently interfered with the Plaintiff's current and prospective relations and business expectancies.

187.   Defendant Brynaert engaged in this conduct in New York State.

188.   The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's intentional interference with his business expectancies.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXIII
## BUSINESS CONSPIRACY UNDER VIRGINIA CODE § 18.2-499, 500

189.   The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 188 above.

190.   By virtue of the acts set forth above, Defendants Kimberlin, Brynaert, and Rauhauser, combined, associated, agreed, mutually undertook and acted in concert, and thereby conspired to willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession (the "Conspiracy").

191.   Such acts were accomplished by the unlawful means of defamation, extortion, and intentional infliction of emotional distress.

192.   Such acts were accomplished by the following overt acts:

a. Defamation of the Plaintiff by Defendants Kimberlin, Brynaert, and Rauhauser;

b. Extortion of the Plaintiff by Defendants Kimberlin, and Rauhauser;

c. Intentional Infliction of Emotional Distress by Defendants Kimberlin, Brynaert, and Rauhauser.

193.    The Conspiracy did willfully and maliciously harm the Plaintiff his reputation, business, trade and/or profession.

194.    As a result of the Conspiracy and the overt acts committed in furtherance of the conspiracy, the Plaintiff suffered actual damages.

WHEREFORE, the Plaintiff seeks an award of actual damages in an amount of no less than $2,000,000.00, statutory (treble) damages and punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXIV
## CIVIL COMMON LAW CONSPIRACY--VIRGINIA

195.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 194 above.

196.    By virtue of the acts set forth above, Defendants Kimberlin, Brynaert, and Rauhauser, combined, associated, agreed, mutually undertook and acted in concert, and thereby conspired to willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession (the "Conspiracy").

197.    Such acts were accomplished by the unlawful means of defamation, extortion, and intentional infliction of emotional distress.

198.    Such acts were accomplished by the following overt acts:

a. Defamation of the Plaintiff by Defendants Kimberlin, Brynaert, and Rauhauser;

b. Extortion of the Plaintiff by Defendants Kimberlin, and Rauhauser;

c. Intentional Infliction of Emotional Distress by Defendants Kimberlin, Brynaert, and Rauhauser.

30

199. The Conspiracy did willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession.

200. As a result of the Conspiracy and the overt acts committed in furtherance of the conspiracy, the Plaintiff suffered actual damages.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXV
## CIVIL COMMON LAW CONSPIRACY--MARYLAND

201. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 200 above.

202. By virtue of the acts set forth above, Defendants Kimberlin, Brynaert, and Rauhauser, combined, associated, agreed, mutually undertook and acted in concert, and thereby conspired to willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession (the "Conspiracy").

203. Such acts were accomplished by the unlawful means of defamation, extortion, and intentional infliction of emotional distress.

204. Such acts were accomplished by the following overt acts:

   a. Defamation of the Plaintiff by Defendants Kimberlin, Brynaert, and Rauhauser;

   b. Extortion of the Plaintiff by Defendants Kimberlin, and Rauhauser;

   c. Intentional Infliction of Emotional Distress by Defendants Kimberlin, Brynaert, and Rauhauser.

205. The Conspiracy was formed in part in Maryland.

206.    The Conspiracy did willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession.

207.    As a result of the Conspiracy and the overt acts committed in furtherance of the conspiracy, the Plaintiff suffered actual damages.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXVI
## CIVIL COMMON LAW CONSPIRACY—NEW YORK

208.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 207 above.

209.    By virtue of the acts set forth above, Defendants Kimberlin, Brynaert, and Rauhauser, combined, associated, agreed, mutually undertook and acted in concert, and thereby conspired to willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession (the "Conspiracy").

210.    Such acts were accomplished by the unlawful means of defamation, extortion, and intentional infliction of emotional distress.

211.    Such acts were accomplished by the following overt acts:

      a. Defamation of the Plaintiff by Defendants Kimberlin, Brynaert, and Rauhauser;

      b. Extortion of the Plaintiff by Defendants Kimberlin, and Rauhauser;

      c. Intentional Infliction of Emotional Distress by Defendants Kimberlin, Brynaert, and Rauhauser.

212.    The Conspiracy was formed in part in New York State.

213.    The Conspiracy did willfully and maliciously harm the Plaintiff in his reputation, business, trade and/or profession by the use of defamation, extortion, infliction of emotional distress.

214.    As a result of the Conspiracy and the overt acts committed in furtherance of the conspiracy, the Plaintiff suffered actual damages.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXVII
## FEDERAL STALKING—DEFENDANT KIMBERLIN

215.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 214 above.

216.    Defendant Kimberlin used an interactive computer service to engage in a course of conduct that caused the Plaintiff substantial emotional distress.

217.    Defendant Kimberlin used an interactive computer service to engage in a course of conduct that caused the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

218.    Defendant Kimberlin intended to cause the Plaintiff substantial emotional distress.

219.    Defendant Kimberlin intended to cause the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

220.    Such conduct is in violation of 18 U.S.C. § 2261A.

221.    Such conduct had no legitimate purpose.

222.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Kimberlin's stalking.

33

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXVIII
### FEDERAL STALKING—DEFENDANT RAUHAUSER

223.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 222 above.

224.    Defendant Rauhauser used an interactive computer service to engage in a course of conduct that caused the Plaintiff substantial emotional distress.

225.    Defendant Rauhauser used an interactive computer service to engage in a course of conduct that caused the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

226.    Defendant Rauhauser intended to cause the Plaintiff substantial emotional distress.

227.    Defendant Rauhauser intended to cause the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

228.    Such conduct is in violation of 18 U.S.C. § 2261A.

229.    Such conduct had no legitimate purpose.

230.    The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Ruahuaser's stalking.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXIX
## FEDERAL STALKING—DEFENDANT BRYNAERT

231. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 230 above.

232. Defendant Brynaert used an interactive computer service to engage in a course of conduct that caused the Plaintiff substantial emotional distress.

233. Defendant Brynaert used an interactive computer service to engage in a course of conduct that caused the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

234. Defendant Brynaert intended to cause the Plaintiff substantial emotional distress.

235. Defendant Brynaert intended to cause the Plaintiff to be in reasonable fear of the death of, or serious bodily injury for himself, an immediate family member or his spouse.

236. Such conduct is in violation of 18 U.S.C. § 2261A.

237. Such conduct had no legitimate purpose.

238. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's stalking.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXX
## NEW YORK STALKING—DEFENDANT BRYNAERT

239. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 238 above.

35

240. Defendant Brynaert has intentionally engaged in a course of conduct directed at the Plaintiff which is likely to cause the Plaintiff to reasonably fear physical injury to himself or a member of his immediate family.

241. Defendant Brynaert did such acts with an intent to harass, annoy or alarm the Plaintiff.

242. Such conduct is in violation of NY CLS Penal Law§ 120.50.

243. Such conduct had no legitimate purpose.

244. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's stalking.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXXI
## NEW YORK HARASSMENT—DEFENDANT BRYNAERT

245. The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 244 above.

246. Defendant Brynaert has intentionally engaged in a course of conduct directed at the Plaintiff which is likely to cause the Plaintiff to reasonably fear physical injury to himself or a member of his immediate family.

247. Defendant did such acts with an intent to harass, annoy or alarm the Plaintiff.

248. Such conduct is in violation of NY CLS Penal Law§ 240.25.

249. Such conduct had no legitimate purpose.

250. The Plaintiff has suffered and continues to suffer damages as a direct result of Defendant Brynaert's harrassment.

WHEREFORE, the Plaintiff requests an award of damages of no less than $2,000,000.00, punitive damages, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

## COUNT XXXII
## INJUNCTION

251.    The Plaintiff incorporates as if fully stated herein, the allegations of paragraphs 1 through 250 above.

252.    By virtue of the Defendants' continued activities as described herein, the Plaintiff will suffer irreparable harm including, but not limited to, damage to his business, reputation, standing in his industry and danger of physical harm to himself and anyone surrounding him.

253.    By virtue of the Defendant's outrageous conduct, including defamation, harassment, intentional infliction of emotional distress, intentional exposure to threats of terrorism, invasion of privacy, extortion, and other illegal and/or immoral acts, there is a substantial likelihood that the Plaintiff will succeed on the merits of his claims after trial.

254.    Because the Defendants' conduct is designed to punish the Plaintiff for providing legal advice and for the exercise of freedom of speech, the balance of equities favors the grant of injunctive relief.

255.    Injunctive relief would be in the public interest because it would uphold freedom of speech and the right to receive the advice of counsel, and it would create a disincentive to stalk and harass any person for engaging in such constitutionally protected activities.

256.    Va. Code § 18.2-500 specifically provides that the Plaintiff will be entitled to injunctive relief against a statutory business conspiracy as well as money damages.

257.  Virginia case law also provides that a person can obtain an injunction to prevent a crime from occurring. This conspiracy is presently in violation of numerous state and federal laws, including VA. CODE §18.2-46.5(C).which states that

Any person who solicits, invites, recruits, encourages, or *otherwise causes or attempts to cause* another to participate in an act or acts of terrorism, as defined in § 18.2-46.4, is guilty of a Class 4 felony.

(Emphasis added.)

258.  Future harm to the Plaintiff can only be prevented by the issuance of an injunction enjoining the Defendants from identifying Aaron Walker as Aaron Worthing, from giving out Mr. Walker's personal information including and not limited to his home address, his current employer, and the address of his employer, as well as a restraining order further harassment.

WHEREFORE, the Plaintiff request an injunction against the Defendants enjoining them from 1) identifying the Plaintiff as the pseudonymous author known as Aaron Worthing or A.W., or posting personal information about the Plaintiff including but not limited to his home address, his current employer or his work address, 2) requiring the Defendants to remove all references from public view identifying the Plaintiff as the pseudonymous author known as Aaron Worthing or A.W., or providing personal information about the Plaintiff including but not limited to his home address, his current employer or his work address, 3) prohibiting the Defendants from contacting the Plaintiff or his immediate family or his current employer, 4) prohibiting the Defendants from approaching within 1,000 feet of the Plaintiff, his wife, his current employer and any future employer, 5) prohibiting the Defendants from conspiring with others to accomplish the above prohibited acts, and for an award of damages of no less than $2,000,000.00, attorneys' fees, court costs and any and all relief this Court deems just and equitable.

Dated: Monday, January 30, 2012

Respectfully Submitted,
By Counsel,

Aaron J. Walker, Esq.
Virginia Bar# 48882
7537 Remington Road
Manassas, Virginia 20109
P: 703-216-0455
F: n/a

VIRGINIA:

IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY

| | |
|---|---|
| **AARON WALKER,** | |
| Plaintiff | |
| v. | Case No. _____ |
| **BRETT KIMBERLIN,** | |
| and | |
| **RON BRYNAERT,** | |
| and | |
| **NEAL RAUHAUSER,** | |
| Defendants | |

# MOTION TO FILE UNDER SEAL AND FOR PROTECTIVE ORDER

COMES NOW, the Plaintiff, Aaron J. Walker, *pro se*, and files this Motion to File Under Seal and for a Protective Order preventing the Defendants from disclosing the contents of this suit.

1.     The Plaintiff, Aaron J. Walker, is an attorney in good standing in Virginia and Washington, D.C. He lives in Manassas, Virginia.

2.     Defendant Brett Kimberlin is a convicted terrorist known as The Speedway Bomber, *Kimberlin v. White*, 7 F.3d 527 (6th Cir. 1993), when he set off eight bombs in six days. Defendant Kimberlin is also a convicted, perjurer *Kimberlin v. White*, 798 F.Supp. 472 (1992).

He is a public figure. He is a founder of the political groups Velvet Revolution and Justice Through Music.

3.     Defendant Ron Brynaert is a former reporter and now blogger.[1]

4.     Defendant Neal Rauhauser is a blogger.

5.     At all times relevant hereto, the Plaintiff has worked as a lawyer in Virginia and Washington, D.C.

6.     The Plaintiff has also blogged as "Aaron Worthing" and "A.W." at Patterico's Pontifications, Big Government, Big Journalism, Allergic to Bull and Everyone Draw Mohammed. Those blogs can be found at http://patterico.com/, http://biggovernment.com/, http://bigjournalism.com/,                                        http://allergic2bull.blogspot.com/, http://everyonedrawmohammed.blogspot.com/ respectively.

7.     At all times relevant to these proceedings, the Plaintiff has maintained his anonymity by the use of the pseudonyms "A.W." and "Aaron Worthing" although the Defendants have recently determined these pseudonyms belongs to the Plaintiff. The Plaintiff has always made it clear that A.W. and Aaron Worthing is the same person.

8.     On this day (January 30, 2012) the Plaintiff has filed suit alleging that the Defendants have conspired with each other in order to stalk, harass, defame, extort, inflict emotional distress, and tortiously interference with the Plaintiff's business relations. They have

---

[1] For the benefit of the court each "blog," short for weblog, is composed of a series of posts which discuss various topics, sharing facts, opinion and analysis. Then, with all of the blogs relevant to this motion, the post allows a broad swath of the public to compose and attach "comments" to each post, allowing for praise, criticism and even off-topic remarks. Regular commenters often even communicate, in public, in this fashion. For more discussion of how such features of the internet work, see *Independent Newspapers v. Brodie*, 966 A.2d 432 (M.D. 2009), especially starting at 437.

done the same to Deputy Los Angeles District Attorney John Patrick Frey and private citizens Mandy Nagy and Mike Stack.

9.     In Plaintiff's particular case, the Defendants recognize that the Plaintiff's online activities as "Aaron Worthing" have infuriated "Muslim hardliners" (the Defendant Kimberlin's own words). The Defendants Kimberlin and Rauhauser have both sought to extort the Plaintiff, by threatening to tell the world that the Plaintiff is "Aaron Worthing" with the knowledge that this would place the Plaintiff and his wife in danger. The Defendant Kimberlin has admitted to the FBI, to Fairfax County Police, and the Prince William County Police in an email that he has attempted to place the Plaintiff at risk for terrorist attack. Defendant Brynaert has actually told the world that the Plaintiff is "Aaron Worthing" and the Defendants Kimberlin and Rauhauser have attempted to do the same.

10.     The ordinary procedure of making each case a public record places the victim of extortion into a catch-22: in order to fight this extortion, he or she must voluntarily subject him or herself to the very act he was being threatened with. In other words, ordinary court procedure would require the Plaintiff to reveal to the world that he is "Aaron Worthing"—the very act he was threatened with, in Defendant's Kimberlin extortion.

11.     Further, the conduct of revealing that the Plaintiff is "Aaron Worthing" is likely to be illegal VA. CODE §18.2-46.5(C).which states that

> Any person who solicits, invites, recruits, encourages, or *otherwise causes or attempts to cause* another to participate in an act or acts of terrorism, as defined in § 18.2-46.4, is guilty of a Class 4 felony.

(Emphasis added.) The Defendants are literally attempting to get the Plaintiff killed in a terrorist attack. Virginia case law allows the courts to use injunctive relief to prevent a criminal act.

3

12.   By virtue of the Defendants' continued activities as described herein, the Plaintiff will suffer irreparable harm including, but not limited to, damage to his business, reputation, standing in his industry and danger of physical harm to himself and anyone surrounding him.

13.   Therefore the Plaintiff respectfully moves that the court seal the complaint and this motion to seal. Further the Plaintiff asks that this court grant a protective order to the Plaintiff require that the Defendants also file all documents in this case under seal, and preventing the Defendants from any act that identifies the Plaintiff as the pseudonymous author known as Aaron Worthing or A.W., or posting personal information about the Plaintiff including but not limited to his home address, his current employer or his work address, or conspiring with others to accomplish the above prohibited acts.

14.   By virtue of the Defendant's outrageous conduct, including defamation, harassment, intentional infliction of emotional distress, intentional exposure to threats of terrorism, invasion of privacy, extortion, and other illegal and/or immoral acts, there is a substantial likelihood that the Plaintiff will succeed on the merits of his claims after trial.

15.   Because the Defendants' conduct is designed to punish the Plaintiff for providing legal advice to a third party and for the exercise of freedom of speech, the balance of equities favors the grant of injunctive relief.

16.   Injunctive relief would be in the public interest because it would uphold freedom of speech and the right to receive the advice of counsel. Further, it would create a disincentive to stalk and harass any person for engaging in such constitutionally protected activities. Finally, it would create assurance to any person being extorted that they can fight this extortion without causing the exact harm they were being threatened with.

4

The Plaintiff therefore moves this Court to (1) permit the Plaintiff to file his complaint under seal, as well as (2) placing this "Motion to File under Seal and for Protective Order" under seal, and for a protective order (3) requiring that all documents filed by the Defendants also be placed under seal, and (4) prohibiting the Defendants from identifying the Plaintiff as the pseudonymous author known as Aaron Worthing or A.W., or posting personal information about the Plaintiff including but not limited to his home address, his current employer or his work address, or conspiring with others to accomplish the above prohibited acts and any and all relief this Court deems just and equitable.

Dated: Monday, January 30, 2012

Respectfully Submitted,
By Counsel,

Aaron J. Walker, Esq.
Virginia Bar# 48882
7537 Remington Road
Manassas, Virginia 20109
P: 703-216-0455
F: n/a

5